**JOSEPH A. and Josephine A., by their next friend, Corrine WOLFE; Michael B., by his next friend, Dr. Lucy Gale McMurray; Michelle C., by her next friends, La Donna Harris and Dr. Lucy Gale McMurray; Joel D., by his next friend, Dr. Lucy Gale McMurray; Susan E. and Donald E., by their next friend, Barbara Burns, on their own behalf and on behalf of all others similarly situated, Plaintiffs–Appellees,**

v.

**NEW MEXICO DEPARTMENT OF HUMAN SERVICES; Lawrence B. Ingram, individually and as Secretary of the New Mexico Department of Human Services; Margaret Larragoite, individually and as Director of the Social Services Divi-**

sion of the New Mexico Department of Human Services; Darold Christiansen, individually and as Director of the Bernalillo County Social Services Division of the Department of Human Services; Janet Bryan, individually and as Director of the Santa Fe County Social Services Division of the Department of Human Services, Defendants–Appellants.

Nos. 92–2267, 93–2091, 93–2178 and 93–2190.

United States Court of Appeals, Tenth Circuit.

June 30, 1994.

Marcia Robinson Lowry, Anne W. Murdaugh, Christopher Dunn, Children's Rights Project, American Civil Liberties Union, New York City, Robert Levy of Levy & Geer, Albuquerque, NM, for plaintiffs-appellees.

Tom Udall, Atty. Gen., NM, Robert Tabor Booms, Robyn Hoffman, and Nancy Alma Taylor, Asst. Attys. Gen., Santa Fe, NM, Steven Douglas Looney of Crider, Calvert & Bingham, P.C., Albuquerque, NM, for defendants-appellants.

* Honorable Clarence A. Brimmer, Jr., District Judge, United States District Court for the District of Wyoming, sitting by designation.
1. After examining the briefs and appellate record, this panel has determined unanimously that

Before MOORE and KELLY, Circuit Judges, and BRIMMER,* District Judge.

PAUL KELLY, Jr., Circuit Judge.

These cases require us to determine whether the district court properly awarded attorneys' fees to plaintiffs for their efforts in monitoring a consent decree.[1] Because we are unable to determine from the record whether the district court considered the necessity of the work performed and the reasonableness of the fees, we remand for further proceedings.

*No. 92–2267*

In September 1983, plaintiffs, an open class of all the children in New Mexico's foster-care custody, entered into a consent degree with the New Mexico Department of Human Services (defendants) which obligated defendants to enact wide-ranging reform of the New Mexico foster-care system. Pursuant to that agreement, plaintiffs became eligible for attorneys' fees for hours spent monitoring the consent decree. Under the procedure established by the district court, plaintiffs would periodically submit fee applications to the court-appointed special master who made recommendations to the court. The court would then rule on the application. This appeal involves an award of fees and costs totalling $13,566.24 for April, May, and June 1992.

Defendants raise two issues on appeal: whether plaintiffs were still prevailing parties for purposes of their fee request, and whether the court abused its discretion in awarding full fees to plaintiffs for the relevant period.

 We will reverse the grant of attorneys' fees by a district court only in instances of abuse of discretion. *Reazin v. Blue Cross & Blue Shield of Kansas, Inc.*, 899 F.2d 951, 980 (10th Cir.), *cert. denied*, 497 U.S. 1005, 110 S.Ct. 3241, 111 L.Ed.2d 752 (1990). "This standard applies both to the district

oral argument would not materially assist the determination of these appeals. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The cases are therefore ordered submitted without oral argument.

court's decision to award fees and to its determination of the amount of fees." *Keith v. Volpe,* 833 F.2d 850, 854 (9th Cir.1987). Underlying questions of fact, however, are reviewed for clear error, *Reazin,* 899 F.2d at 980, while the statutory interpretation and legal analysis supporting the district court's decision are reviewed de novo, *Homeward Bound, Inc. v. Hissom Memorial Ctr.,* 963 F.2d 1352, 1355 (10th Cir.1992).

■ In federal civil rights cases, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. Fees are also available to the prevailing party for post-judgment monitoring of a consent decree. *Diaz v. Romer,* 961 F.2d 1508, 1511 (10th Cir.1992) (citing *Duran v. Carruthers,* 885 F.2d 1492, 1495 (10th Cir.1989)). A party is entitled to fees for pre-judgment work or for post-judgment monitoring when he or she has succeeded "'on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)).

■ Plaintiffs' motion to dismiss this appeal on the grounds that defendants (a) are collaterally estopped from raising the issue of plaintiffs' prevailing party status, and (b) have failed to comply with procedures set up by the district court for objecting to the fee award is denied. "A party may file a motion to dismiss only on the ground that the appeal is not within the jurisdiction of this court." 10th Cir.R. 27.2.1. The theoretical possibility that a party may be collaterally estopped from relitigating a particular issue does not divest a reviewing court of jurisdiction *ab initio.*

■ Additionally, we do not agree that defendants are collaterally estopped to bring this claim. The fees requested here are for particular work done during a discrete and separate time period. Defendants' failure to

appeal earlier rulings of the district court approving earlier fee applications does not collaterally estop them from raising the propriety of these fees in this appeal. "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979) (footnote omitted). Because the circumstances surrounding the fee application at issue here are distinct from those existing at the time of the earlier applications, the prevailing party issue now raised is not identical to any earlier version based on earlier time periods, and collateral estoppel does not apply.

■ As mentioned above, the fees at issue here are for work performed during the period April through June 1992. In March 1988, plaintiffs filed a motion to enforce the consent decree and to hold defendants in contempt. Appellees' Supp.App. in Case No. 93–2178 at 6. Defendants argue that because plaintiffs ultimately failed to obtain the contempt order, they are not prevailing parties for purposes of this fee award.[2] Aside from the fact that plaintiffs' motion for contempt was still pending at the time of the award, we do not agree that plaintiffs' arguable lack of later success during the monitoring phase deprived them of prevailing party status. While the degree of success plays a part in the overall analysis, we think a more important inquiry is whether the work done was necessary to achieve the final result. *See Pennsylvania v. Delaware Valley Citizens' Council For Clean Air,* 478 U.S. 546, 561, 106 S.Ct. 3088, 3096, 92 L.Ed.2d 439 (1986).

In *Duran,* 885 F.2d 1492, a civil rights case challenging prison conditions, plaintiffs had withdrawn a contempt motion upon stipulation that defendants would withdraw their motion for wholesale modification of the operative consent decree. *Id.* at 1496. In affirming an award of attorneys' fees to plain-

---

2. Indeed, after this appeal was filed, the district court terminated the consent decree. Appellants' App. in Case No. 93–2178 at doc. 1. Plain-

tiffs have objected to the termination and have requested reconsideration of the district court's order.

tiffs, this court noted that "[t]o 'prevail' does not mean that a plaintiff ... must obtain 'total victory' after a full trial." *Id.* Later, in *Diaz*, 961 F.2d 1508, where a subclass of plaintiffs had failed to prevail on a particular issue, we held that the subclass was "part of the prisoner class that prevailed in the original litigation," and that they "did not lose their prevailing-party status when they were named a subclass." *Id.* at 1511. Thus, the fact that plaintiffs ultimately did not prevail in their efforts to secure a contempt order does not divest them of their status as prevailing parties so long as the work done was necessary to the overall effort. *See also Keith*, 833 F.2d at 857 (holding that "a finding of contempt or obstruction of implementation is not a prerequisite to an award of attorney fees for reasonable post-judgment monitoring of a consent decree"). We therefore hold that plaintiffs continued to be prevailing parties for purposes of eligibility for an attorneys' fee award under 42 U.S.C. § 1988.

Our determination that plaintiffs retain their prevailing party status is not the end of the analysis, however. Indeed, such a conclusion is only the threshold; further inquiry is required to determine whether the effort expended was necessary and the fees requested by plaintiffs are reasonable. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939.

▇▇▇ Plaintiffs argue that the issue of reducing the fee award to account for lack of success was not raised to the district court. Defendants, however, explicitly raised the issue of plaintiffs' continuing prevailing party status, which subsumes within it the question of whether plaintiffs were sufficiently successful to warrant an award of fees. Further, under *Hensley,* the district court is required to consider the reasonableness of the requested fees as part of its total analysis. We therefore find the issue sufficiently raised in the district court to permit our review.

▇▇▇ Fee awards made under the authority of federal fee-shifting statutes come under close scrutiny. *United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc.*, 834 F.2d 1533, 1548 (10th Cir.1987). This is because these statutes

"were not designed as a form of economic relief to improve the financial lot of attorneys nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client. Instead, the aim of such statutes was to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws."

*Id.* (quoting *Delaware Valley,* 478 U.S. at 565, 106 S.Ct. at 3098).

In order to assess the reasonableness of a claim for fees,

the district court must carefully scrutinize the total number of hours reported to arrive at the number of hours that can reasonably be charged to the losing party, much as a senior partner in a private firm would review the reports of subordinate attorneys when billing clients whose fee arrangement requires a detailed report of hours expended and work done.

*Ramos v. Lamm,* 713 F.2d 546, 555 (10th Cir.1983). Fees are compensable only for work that is " 'useful and of a type ordinarily necessary' to secure the final result obtained." *Delaware Valley,* 478 U.S. at 561, 106 S.Ct. at 3096 (quoting *Webb v. County Bd. of Educ.,* 471 U.S. 234, 243, 105 S.Ct. 1923, 1928, 85 L.Ed.2d 233 (1985)). Thus, " '[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.' " *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940 (quoting *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir.1980)). Particularly in civil rights cases such as this, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* 461 U.S. at 435, 103 S.Ct. at 1940.

▇▇▇ Plaintiffs appear to argue that, because the fees here arose in a post-decree monitoring setting, they are immune from the possibility of reduction under the principles of *Hensley.* We find nothing in *Hensley* or in any other case which would dictate such a result. We read *Hensley* to apply equally to fees generated before a judgment as well as those accrued in post-judgment monitor-

ing. We acknowledge that this case is somewhat different than *Hensley* because, here, the district court did not know at the time of the fee award that plaintiffs would ultimately fail in their attempt to secure a contempt order. Under the circumstances of this case, therefore, we cannot require the special master and the court to have evaluated plaintiffs' fee applications in light of that particular future development. That conclusion, however, does not foreclose analysis of plaintiffs' motives in filing the contempt motion initially. On remand, the court should determine whether the defendants were failing to comply with the consent decree and whether the filing of a motion for contempt was a necessary response.

Our insistence that plaintiffs demonstrate the necessity for and the reasonableness of their fee request is not contrary to circuit precedent. In both *Duran* and *Diaz* this court upheld a plaintiff's right in civil rights cases to obtain fees for post-judgment monitoring activities. *Diaz*, 961 F.2d at 1511; *Duran*, 885 F.2d at 1495–96. Neither case, however, eliminated the plaintiff's burden of demonstrating that the fees requested were for necessary services and are reasonable in amount. Plaintiffs' suggestion that fees are awardable merely because they are "reasonably related to monitoring" is not inaccurate. However, the special master and the district court, must provide this court with specific findings to substantiate their conclusion that the fees requested were for necessary services and are reasonable.

Our opinion today does not imply that plaintiffs' efforts in pursuing the contempt motion were necessarily unreasonable. Indeed, it may be that the litigation of the contempt motion resulted in auxiliary or overall benefits to plaintiffs that were apparent at the time of the award. *See Duran*, 885 F.2d at 1496 (withdrawal of contempt motion not conclusive of whether a party has prevailed). We further note that plaintiffs also were required to spend time defending against a motion for substantial compliance filed by defendants. From this record, how-

ever, we cannot determine whether the work done during the billing period at issue was "useful and of a type ordinarily necessary," *see Webb*, 471 U.S. at 243, 105 S.Ct. at 1928, to plaintiffs' cause.

The district court summarily adopted the findings of the special master. *See* Order at Defendants' Br., attach. 1. The special master had noted only that "the services and expenses reported are relevant and reasonable in amount." *Id.* attach. 2 at 2; *see also id.* at 3 ("Attorney's fees totalling $13,132.20 are relevant to the case and reasonable as to time and rate."). While the report does explain why certain entries were disallowed, it does not adequately explain the relationship between the need for the work and the fees awarded.

Unless district courts are specific in their reasons for awarding attorneys' fees, we have no adequate basis upon which to review such awards. *Ramos*, 713 F.2d at 552. We acknowledge the district court's discretion in making fee awards. *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. However, it "must determine not just the actual hours expended by counsel, but which of those hours were reasonably expended in the litigation." *Ramos*, 713 F.2d at 553. The district court here failed to make clear that it considered these factors.[3]

*No. 93–2091*

This appeal involves the fee application for the period July through September 1992. We find that the order of the district court adopting the report of the special master suffers from the same analytical deficiencies, overall, as the order in appeal No. 92–2267, discussed above. We do note, however, that at two places in his report, the special master performed the type of analysis necessary to justify an award of fees. Those items involved defendants' challenge to fees associated with efforts to settle plaintiffs' charges of noncompliance and defendants' challenge to plaintiffs' motion to strike an exhibit from the record. *See* Defendants' Br. at 34. Unfortunately, the balance of the report merely concludes summarily that services were rele-

---

**3.** We note that the award of attorneys' fees is governed by Rule 54.5 of the United States District Court for the District of New Mexico.

vant and reasonable. *Id.* at 29, 31. Thus, we must also reverse the order of the district court in appeal No. 93–2091 and remand for further proceedings.

*Nos. 93–2178 & 93–2190*

Once again, the findings are insufficient for us to determine whether an abuse of discretion has occurred in the award of attorneys' fees to plaintiffs for their monitoring activity. The report of the special master, while noting that defendants had argued there had been no gain for the plaintiffs during the fee period in issue, concluded merely that fees were due under § XI of the consent decree. Such limited analysis is insufficient for this court to determine the presence of error.[4]

The judgments of the United States District Court for the District of New Mexico are REVERSED, and these cases are REMANDED for further findings in accordance with this opinion. Plaintiffs' motion to dismiss and defendants' motion to strike plaintiffs' reply or to file a sur-reply in appeal no. 92–2267 are DENIED.

---

4. On page 7 of the report, the special master, addressing an objection to specific items in several attorneys' time sheets, explained what work was done and how it related to monitoring activities. That is the type of analysis necessary to substantiate the reasonableness of the requested fees.