F I L E D
United States Court of Appeals
Tenth Circuit

DEC 13 2002

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JIMMY SINAJINI, BILL JOE
SINAJINI, JOE LEE BEGAY, and
HERBERT BEGAY, minors, through
their parents and/or guardian, LENA
BEGAY; CECIL VIJIL, SHIRLEY
VIJIL, CLARA LAMEMAN, through
their parent and/or guardian, LEONA
VIJIL; HOLLY NEZ, HOWARD NEZ,
and HANNAH NEZ, minors, through
their parent and/or guardian, MARION
NEZ; GILBERT ROCKWELL and
LINDA ROCKWELL, minors, through
their parent and/or guardian, LENA
ROCKWELL; EDITH BIGMAN,
JUANITA BIGMAN, and DOROTHY
BIGMAN, minors, through their
parent and/or guardian, SETH
BIGMAN; ANTHONY DEE, minor,
through his parent and/or guardian,
GRAY DEE; HOWARD HOLIDAY
and PETER HOLIDAY, minors,
through their parent and/or guardian,
TEDDY HOLIDAY; HAROLD VIJIL,
ALFRED VIJIL, minors, through their
parent and/or guardian, TULLY VIJIL;
FERRELL COLLINS, SHERRIL
COLLINS, and ILENE COLLINS,
minors, through their parent and/or
guardian, MARTHA COLLINS;
SARAH BILLY and BRENDA
BILLY, minors, through their parent
and/or guardian, JOHN BILLY;
LEROY ATCITTY; PATRICIA
DENNISON, a minor, through her
parents TOM DENNISON and
ARLENE DENNISON; JIMMY

No. 01-4200
(D. Ct. No. 74-CV-346-S)
(D. Utah)

GOODMAN, JR. and GILBERT WOODMAN, minors, through their parents and/or guardians, LUCY GOODMAN and JIMMY GOODMAN; ELAINE WILLIAMS and LORINDA WILLIAMS, minors, through their parent and/or guardian, MARY ANN WILLIAMS; THE RED MESA CHAPTER OF THE NAVAJO TRIBE; and THE OLJATO CHAPTER OF THE NAVAJO TRIBE,

        Plaintiffs - Appellants,

  and

UNITED STATES OF AMERICA; NAVAJO NATION, ANETH CHAPTER; NATASHA LIVINGSTON; DAWNY CLARK, NATHAN CLARK, AND LATOYA CLARK, minors, through their parent and/or guardian, SHERRILL CLARK,

        Plaintiffs - Intervenors,

  v.

BOARD OF EDUCATION OF THE SAN JUAN COUNTY SCHOOL DISTRICT; DAVID ADAMS, MAXINE NIELSON, HAROLD LYMAN, TOM HOLIDAY, and ROBERT BILLIE, all individually and as members of the Board of Education of the San Juan School District; KENNETH MAUGHAN, individually and as Superintendent of the San Juan School District; THE SAN JUAN

- 2 -

COUNTY COMMISSION; DALE
HOLMES, individually and as
Chairman of the San Juan County
Commission; WILLIAM G. DUNOW
and CASE E. BRODERICK,
individually and as commissioners of
the San Juan County Commission;
UTAH STATE BOARD OF
EDUCATION,

Defendants - Appellees.

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Judge, **HARTZ**, and **O'BRIEN**, Circuit Judges.

Plaintiffs-appellants appeal the district court's calculation of attorneys' fees

awarded to them pursuant to 42 U.S.C. § 1988(b). We exercise jurisdiction

pursuant to 28 U.S.C. § 1291 and AFFIRM.

I. Background

This appeal arises out of a federal civil rights action the parties have

litigated for almost thirty years. Specifically, this appeal concerns the district

court's calculation of attorneys' fees under 42 U.S.C. § 1988(b) as to all matters

arising from the 1997 Consent Decree in Sinajini v. Bd. of Educ. of San Juan

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

County Sch. Dist., 964 F. Supp. 319 (D. Utah 1997) ("Sinajini I").  The Consent Decree, in addition to staying the Sinajini litigation, required a voluntary dismissal without prejudice of Chee v. Bd. of Educ., U.S. District Court for Utah Docket No. 2:94-CV-0386.  Sinajini I, 964 F. Supp. at 321-22.  The United States was also a party to the 1997 Consent Decree and agreed not to commence a contemplated discrimination suit before complying with certain dispute resolution provisions.  Id. at 322.  The district court awarded limited attorneys' fees to the plaintiffs.

This is the second appeal of an award of attorneys' fees in the matter.  In Sinajini v. Bd. of Educ. of San Juan County Sch. Dist., 233 F.3d 1236 (10th Cir. 2000) ("Sinajini II"), we remanded the question of attorneys' fees and costs to the district court with specific instructions "to make a uniform resolution on the question of attorney's fees and costs."  Id. at 1240.  Our opinion stated that the district court should first determine whether plaintiffs had prevailed and then "calculate the hours reasonably expended in light of the results achieved and use that as the lodestar for the final award."  Id. at 1242.  On remand, the district court increased its initial calculation by approximately ten times, but it still did not award full fees.

On appeal, plaintiffs assert that the district court abused its discretion when it calculated fees for Attorneys Eric P. Swenson and Therese E. Yanan.  Plaintiffs

make three broad arguments. First, they argue that the district court failed to follow our instructions and abused its discretion when it reduced its award of attorneys' fees to Swenson and Yanan for excessive billing, limited success, and time spent working on fees. Next, they argue that their degree of success requires that we enhance Swenson's fee award. Finally, plaintiffs argue that the "O'Connor factors" require that Swenson and Yanan receive full fees. We address each of these arguments below. Because the district court did not abuse its discretion when it applied our instructions in Sinajini II, we AFFIRM its award of attorneys' fees.

## II. Discussion

### A. Standard of Review

We review the amount of an award of attorneys' fees under 42 U.S.C. § 1988 for abuse of discretion. Robinson v. City of Edmond, 160 F.3d 1275, 1280 (10th Cir. 1998); Sussman v. Peterson, 108 F.3d 1206, 1209 (10th Cir. 1997). We accord great weight to the district court's calculation of attorneys' fees. Sussman, 108 F.3d at 1209; Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1200-01 (10th Cir. 1986) ("An appellate court plays a limited role in reviewing a trial court's award of attorneys' fees. We customarily defer to the District Court's judgment . . . [because it] saw the attorneys' work first hand.") (citation and internal quotations omitted). We find an abuse of discretion "only if

we have a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Brandau v. Kan., 168 F.3d 1179, 1181 (10th Cir. 1999) (citation and internal quotations omitted).

B. The District Court's Reduction of Yanan's Fee by One Third for Excessive Billing

The district court concluded that Swenson's billing records for all the "related matters" in this case "indicate[d] excessive, unnecessary, and duplicative time spent in meetings and conferences" and reflected "inevitable excess." Finding that Swenson had failed in his "ethical obligation to exercise 'billing judgment' and refrain from charging a client for excessive hours," the court reduced the "hours expended" component of his lodestar amount by one third. Appellants do not contest these findings with regard to Swenson, but Yanan asserts that the district court (1) based its evaluation of Swenson's fees exclusively on the Sinajini case, and (2) improperly imputed them to her regarding her work in the "wholly separate" Chee case. We disagree.

We instructed the district court on remand to "make a uniform resolution on the question of attorney's fees and costs." Sinajini II, 233 F.3d at 1240. The district court did not base its findings as to Swenson's fees exclusively on Sinajini. Swenson was co-counsel on Chee, and the district court expressly

indicated that it was determining the "hours . . . reasonably expended by Attorney Swenson on all related matters," not just Sinajini. The district court's calculations make clear that the hours adjusted included those expended in Chee.

Nor did the district court improperly impute its findings as to Swenson to Yanan. The district court expressly based its reduction of Yanan's fee on "the same findings of fact and law already discussed with respect to Attorney Swenson." Swenson and Yanan were co-counsel in Chee, and the two attorneys had claimed similar numbers of hours on the Chee case. It is therefore logical to assume that some of Swenson's "excessive, unnecessary, and duplicative time spent in meetings and conferences" involved meetings and conferences with Yanan, and that the district court saw the same "inevitable excess" in Yanan's billing as it saw in Swenson's billing for Chee.[1] While its explanation is not a model of thoroughness, we are satisfied that the district court's reduction of Yanan's fees by one third did not constitute a reversible abuse of its broad discretion.

---

[1] We are, in fact, prevented from concluding that the district court abused its discretion when it reduced Yanan's fee because nothing in the record on appeal indicates what tasks Yanan performed to justify her fee. Plaintiffs' own proposed findings of fact do not distinguish among counsel in setting forth what they did. For example, plaintiffs' proposed finding of fact number 45 reads: "September, 1994. Counsel works on hiring issues regarding teachers and staff. Counsel drafts Motion to extend briefing." App. at 76. Such proposed findings are an open invitation to treat all counsel similarly.

C.      The District Court's Reduction of Swenson's and Yanan's Fees by

One Third for Limited Success

Plaintiffs next argue that the district court erred when it reduced Swenson's

and Yanan's fees for limited success.  Specifically, plaintiffs assert that:  (1) the

district court impermissibly relied on the same evidence to hold that plaintiffs had

prevailed and that they were not entitled to full attorneys' fees; (2) their success

was, in fact, excellent; (3) the district court improperly relied on an unrelated

case, Meyers v. Bd. of Educ., U.S. District Court for Utah Docket No. 93-C-1080

J; and (4) the district court erred by comparing the terms of the 1975 Agreement

and the 1997 Consent Decree.  We consider, and reject, each contention in turn.

1.      The District Court's Reliance on the Same Evidence to Find That

Plaintiffs Prevailed and That They Were Not Entitled to a Full Fee

Though plaintiffs formulate it in several ways, the thrust of their argument

is that the district court cited evidence of the attorneys' success when it

determined that they were entitled to attorneys' fees under section 1988(b), but

inconsistently and impermissibly cited the same evidence when it held that the

limited degree of their success warranted a one-third reduction in fees.  Plaintiffs

mistakenly conflate the two analyses.

Before any award of attorneys' fees is appropriate, the district court must

determine that the party seeking fees is the "prevailing party."  42 U.S.C.

§ 1988(b); Farrar v. Hobby, 506 U.S. 103, 111-12 (1992) (defining "prevailing party" for purposes of § 1988(b)). "This is a generous formulation that brings the plaintiff only across the statutory threshold." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The district court determined that the plaintiffs prevailed under this standard, and that determination is not at issue on appeal. After determining that a party has prevailed, however, "[i]t remains for the district court to determine what fee is 'reasonable.'" Id. These two analyses are distinct, and the "reasonable fee" inquiry is not as "generous [a] formulation" as the "prevailing party" inquiry. See, e.g., Farrar, 506 U.S. at 114. The "'degree of the plaintiff's success' does not affect 'eligibility for a fee award,'" but it is "'the most critical factor' in determining the reasonableness of a fee award." Id. (quoting Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 790 (1989), and Hensley, 461 U.S. at 436).

Plaintiffs' assertion that the district court may not examine the same evidence and determine that it satisfies the first analysis, but not the second, is therefore without merit. If the law says you must jump five feet to prevail and seven feet to get a full fee, the fact that you jump six feet remains the relevant evidence, and it satisfies the first inquiry but not the second. Thus, for example, the district court did not abuse its discretion when it adopted some of plaintiffs' proposed findings of fact as evidence that they had prevailed, then relied on the

same evidence to find limited success.

     2.      <u>The District Court's Determination of Plaintiffs' Degree of Success as to the Relief Plaintiffs Sought</u>

We instructed the district court to assess the degree of plaintiffs' success in a <u>qualitative</u> rather than a quantitative way, when calculating the fee award. <u>Sinajini II</u>, 233 F.3d at 1241-42 (citing <u>Jane L. v. Bangerter</u>, 61 F.3d 1505, 1511 (10th Cir. 1995)). "The fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." <u>Hensley</u>, 461 U.S. at 435. As plaintiffs acknowledge, the district court properly included all claims in its calculation because none of plaintiffs' unsuccessful claims was "distinct in all respects from [the] successful claims." <u>Id.</u> at 440.

Plaintiffs, however, argue that the district court failed to engage in the required qualitative inquiry but instead reduced the fees "simply because plaintiff did not prevail on every contention in the law suit." We disagree. The district court incorporated plaintiffs' own findings of fact as to the benefits they obtained, considered the significance of those benefits in relation to the time the attorneys spent obtaining them, and made a qualitative judgment based upon its experience with the entire litigation. To the extent plaintiffs seek to involve us in a line-by-line, de novo weighing of their findings as adopted by the district court against the relief they sought at trial, we decline the invitation. The district court

- 10 -

adequately summarized these findings and exercised its qualitative judgment in concluding that the success they represent was limited, rather than exceptional. We are satisfied that the district court did not abuse its broad discretion, but instead adhered to our mandate that it "'focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'" Sinajini II, 233 F.3d at 1242 (quoting Hensley, 461 U.S. at 435).

3.    The District Court's Consideration of *Meyers*

Plaintiffs argue that the district court improperly relied on a related case, Meyers v. Bd. of Educ., U.S. District Court for Utah Docket No. 93-C-1080 J, when calculating its fees. At the end of its order, the district court summarized its discussion, noting that the award followed our instructions in Sinajini II and satisfied the requirements of section 1988(b). It also noted in passing that the fees awarded were "in line with the fees awarded to plaintiffs and paid by defendants [in Meyers]." This comment is the district court's only mention of Meyers; the court's actual calculation of attorneys' fees makes no mention of the case at all. Moreover, the Supreme Court has referred to "awards in similar cases" as one of the factors district courts may consider in calculating attorneys' fees in civil rights actions. See Blanchard v. Bergeron, 489 U.S. 87, 94 (1989) ("The Johnson factors may be relevant in adjusting the lodestar amount . . . ."); Hensley, 461 U.S. at 430 & n.3 (listing twelve factors from Johnson v. Ga.

Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)).  We therefore find nothing inappropriate in the district court's passing mention of Meyers.

We are similarly unpersuaded by plaintiffs' attempt to argue that Meyers is not a "similar case" to the instant one.  Meyers, like Sinajini, Chee, and the United States' contemplated action, was a race discrimination case against the San Juan County School District and concerned the education of Native American students.  Swenson served as counsel for the individual plaintiffs in Meyers. Meyers v. Bd. of Educ. of San Juan County Sch. Dist., 905 F. Supp. 1544, 1551 (D. Utah 1995).  In Meyers, the district court held "that the school district ha[d] a legal duty to provide educational services," Sinajini II, 233 F.3d at 239 (citing Meyers, 905 F. Supp. at 1578), and we noted in Sinajini II that plaintiffs suggested that "they [were] entitled to additional fees for having confirmed the holding of the Meyers case," id. at 1240.  Given these facts, the cases were sufficiently similar that the district court's feather-light reliance on Meyers was not an abuse of discretion.

    4.    The District Court's Comparison of the 1975 Agreement and the 1997 Consent Decree as Evidence of Limited Success

Plaintiffs argue that the district court abused its discretion by basing its finding of limited success on a comparison of the relative benefits plaintiffs

received under the 1997 Consent Decree and the 1975 Agreement.[2]  However,

plaintiffs' objective in this case was to enforce and modify the 1975 Agreement.

Sinajini I, 47 F. Supp. 2d at 1318.  In Hensley, the Supreme Court directed

federal courts to consider "the overall relief" the attorneys obtain on behalf of

their clients.  461 U.S. at 435 (emphasis added).  We provided identical

instructions to the district court in this case, Sinajini II, 233 F.3d at 1242, and

explicitly directed that the district court, in deciding whether plaintiffs had

prevailed, "reevaluate whether the 1997 consent decree modified the school

district's behavior in additional ways that benefitted [plaintiffs]."  Id. at 1241.

Thus, the relative benefit plaintiffs derived from the 1975 Agreement and the

1997 Consent Decree were proper factors for the district court to consider as it

determined the degree of plaintiffs' overall success in the litigation.

---

[2] Plaintiffs also urge us to review the district court's construction of the 1997 Consent Decree de novo because the district court reached its finding of limited success by comparing the 1975 Agreement, which plaintiffs sought to enforce and modify through this litigation, and the 1997 Consent Decree.  While it is true that in most cases "the interpretation of a consent decree is reviewed de novo," Sinclair Oil Corp. v. Scherer, 7 F.3d 191, 193-94 (10th Cir. 1993), we will not at this juncture embark upon a comprehensive de novo review of the terms of the 1997 decree.  First, the issue in this case is not, as it was in Scherer, the parties' bargain set forth in "the four corners of the consent decree" itself, but the district court's calculation of a fee award based upon numerous factors – factors it is better positioned to evaluate than we are.  Id. at 194; accord Mares, 801 F.2d at 1200-01.  Second, we have already instructed the district court on how to calculate the fee award in this case, and those instructions define the bounds of the district court's discretion.  See Sinajini II, 233 F.3d 1236.

D.     Proposed Enhancement of Swenson's Fee for Excellent Success

Because we hold that the district court properly reduced Swenson's fees for limited success, we need not address his contention that his fee award should be enhanced for excellent success.

E.     Applicability of the "O'Connor Factors"

Plaintiffs assert that, should we decline to reverse the district court's reduction of fees for limited success, they are nonetheless entitled to full fees under the "O'Connor factors," so named because they originate in Justice O'Connor's concurring opinion in Farrar.  These factors, however, do not apply to this case.

When a plaintiff in a civil rights suit prevails, but achieves only a *"de minimis* or technical" victory, the district court should not award attorneys' fees. Farrar, 506 U.S. at 117 (O'Connor, J., concurring) ("When the plaintiff's success is . . . de minimis . . . the reasonable fee is zero.").  A civil rights plaintiff who receives nominal damages may nonetheless be entitled to attorneys' fees in some circumstances, because "[n]ominal relief does not necessarily a nominal victory make." Id. at 121 (O'Connor, J., concurring).  Had plaintiffs obtained only nominal damages, it would have been incumbent on the district court to apply the O'Connor factors to determine "whether [they] achieved enough success to be entitled to an award of attorney's fees" despite the nominal damage award.

Phelps v. Hamilton, 120 F.3d 1126, 1131 (10th Cir. 1997).

The O'Connor factors distinguish between cases in which a civil rights plaintiff receives nominal damages but is nonetheless entitled to some attorney's fee, and cases in which the plaintiff's success is truly de minimis, foreclosing the possibility of a fee award. In this case, plaintiffs did not receive only nominal damages; to the contrary, as they themselves insist, they achieved more than that. Thus, the district court's finding of limited success did not invoke the O'Connor factors. See Phelps, 120 F.3d at 1131.[3]

F.    The District Court's Reduction of the Fee Award for Work on Fees

Finally, plaintiffs argue that the district court abused its discretion in applying the across-the-board, one-third reduction in fees to the hours Swenson and Yanan spent working on their fees. Our circuit's approach to such awards has varied from clear hostility to a presumption that they are generally available.[4]

---

[3] Even when the O'Connor factors apply, it remains "within the discretion of the [district court] to determine what constitutes a reasonable fee given the particular circumstances." Barber v. T.D. Williamson, Inc., 254 F.3d 1223, 1233 (10th Cir. 2001).

[4] Compare, e.g., Mares, 801 F.2d at 1206 ("[T]he general rule is that at least some compensation is generally allowable for work reasonably expended on the fee application . . . although hours not spent representing the client are at best on the borderline of what Congress intended to be compensable. . . . [Hours spent litigating fee awards] are especially suspect, and may be disallowed in their entirety. . . . [O]nly in extraordinary circumstances will we disturb a district judge's exercise of his discretion in awarding or denying fees for establishing fees.") (citations and internal quotations omitted), with Glass v. Pfeffer, 849 F.2d

(continued...)

After examining numerous cases, we have found that there is, and should be, no hard-and-fast rule on this question. Rather, "the issue must be resolved on a case-by-case basis." Iqbal v. Golf Course Superintendents Ass'n of Am., 900 F.2d 227, 229-30 (10th Cir. 1990).

We note again that we directed the district court to make "a uniform resolution on the question of attorney's fees and costs." Sinajini II, 233 F.3d at 1240. It is within the district court's broad discretion, given its first-hand experience of the litigation as a whole, to make a holistic determination, rather than a meticulous accounting, in deciding the appropriate fee. See Mares, 801 F.2d at 1200-01. The calculation of what fraction of the claimed fee constitutes a reasonable fee in the circumstances is not a statistical process, as the round one-third figure already indicates. As long as it does not abuse its discretion in some other way, nothing prohibits the district court from applying its findings of limited overall success and a general lack of billing judgment to its fee

---

[4](...continued) 1261, 1266 n.3 (10th Cir.1988) ( "It is obviously fair to grant a fee for time spent litigating the fee issue, at least if the fee petitioner is successful and his claim as to a reasonable fee is vindicated, since it is the adversary who made the additional work necessary.") (citation and internal quotations omitted), and Hernandez v. George, 793 F.2d 264, 269 (10th Cir. 1986) ("[T]his court generally allows recovery of fees for attorneys' work in seeking attorneys' fees. . . . Compensating attorneys for work in resolving the fee issue furthers the purpose behind the fee authorization in § 1988 which is to encourage attorneys to represent indigent clients and to act as private attorneys general in vindicating federal civil rights policies.") (citations omitted).

determination.  In short, we find no abuse of discretion in the district court's application of an across-the-board reduction.

## III.  Conclusion

For the reasons discussed above, we AFFIRM the district court's calculation of attorneys' fees.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge